THE STATE v. L. HARDIN, Appellant.—21 S. W. (2d) 758.

Court en Banc, November 15, 1929.

*L. R. Jones* and *John M. Dalton,* for appellant.

*Stratton Shartel,* Attorney-General, for respondent; *H. H. Blair,* of counsel.

32

HIGBEE, C.—An information was filed in the Circuit Court of Dunklin County charging that, on November 14, 1926, at said county, L. Hardin and Birt Bunch did then and there unlawfully and feloniously transport moonshine whisky, to-wit, one-half pint more or less, against the peace and dignity of the State. On May 2, 1927, the defendants Hardin and Bunch filed "their application for a change of venue from the judge," which was sustained, and the cause was set for trial before Frank Kelly, judge of an adjoining circuit, on June 14, 1927, who was requested to appear and try the case. On the day designated, Judge Kelly appeared, and the defendants made application for a change of venue from the county, which was overruled. The defendant Hardin was granted a severance and on a trial to a jury a verdict was returned finding him guilty as charged and assessing his punishment at imprisonment in the penitentiary for a term of two years. From a sentence in accordance with the verdict he appealed.

S. E. Grugett, sheriff, and his wife and Tom Grooms, who were deputy sheriffs, on the night of November 5, 1926, were out in Grugett's car searching for the defendants. They met them about midnight driving in a five-passenger Chevrolet automobile on a public highway in Dunklin County. Grugett ordered them to stop, but they drove rapidly away and during the pursuit Hardin took up in his hands a five-gallon keg and threw it out of the car. The keg

rolled into the ditch at the side of the road. Bunch was driving the Chevrolet car at the time. In a few minutes Grugett maneuvered his car into a position in front of the Chevrolet and forced the defendants to stop. He arrested both of them, read a search warrant to them and searched the car, but found nothing in it. Grugett took the defendants into his car, and Grooms took charge of the Chevrolet. They turned back and picked up the five-gallon keg which Hardin, five or ten minutes previously, had thrown out on the side of the road. They then returned to Kennett, the county seat, with the keg and the defendants.

While Mr. Grugett was on the witness stand he stated that after the arrest the defendant made a statement. On being asked if it was a voluntary statement, witness said it was; that he had made the defendant no promises or threats: ''He [the defendant] asked where I was going, and I said up the road a piece, and he said: 'I will tell you just man to man, that I had a pint of whisky and threw it out.' ''

Defendant's counsel moved the court to exclude the statement and to instruct the jury to disregard it, because it was incompetent and immaterial as an admission or confession of the offense charged. The motion was overruled and defendant saved an exception. The witness, Mr. Grugett, continued: ''He [the defendant] said: 'Well, I suppose the damn Ku Klux Klan will be satisfied now,' and said to Mrs. Grugett: 'I hope you will excuse me.' '' Defendant's counsel moved that the statement be struck out, because it was prejudicial, and that the panel be quashed, which motion was overruled and defendant saved an exception.

The witness, Grugett, continuing: ''He said I guess they will be satisfied now. The only difference between them and me is that they buy it by the jug in the night time and I buy it by the bottle in the day time.''

Defendant's counsel moved to exclude the statement as prejudicial and no proof of the offense charged, it being offered solely to prejudice the jury. The motion was overruled and the defendant excepted. Witness continuing: ''There were five gallons of moonshine whisky in that keg. I took this bottle (producing one). It is moonshine whisky. It came from the keg I picked up on the roadside that came out of the car Bunch and Hardin was in. It has been in my possession ever since.'' (Here the bottle of liquor was handed to the jury for their inspection, over the objection and exception of the defendant.)

On cross-examination: ''I am not a member of the Ku Klux Klan.''

By MR. JONES, counsel for defendant (out of the hearing of the jury): ''I offer to prove by the witness that some of the jurors in

this case either are members of the Ku Klux Klan or are generally reputed to be."

THE WITNESS: "If there is a Ku Klux in Dunklin County, I don't know him. I was a member of the Ku Klux Klan in 1924. Q. ·How long did you continue as such?"

THE COURT: "Has he answered the question as to these jurors? I am not investigating the relationship of the witness to the Ku Klux Klan. I am trying to let you make the record you want. If it prejudiced anybody it is the jury. Q. You may tell the jury if you know whether or not any of the gentlemen trying this case have ever been affiliated with the Ku Klux Klan in this county? How many of them? A. I don't know; not over two, I don't think. I suppose we all severed our connection at the same time. If there has ever been a meeting since 1924, I don't know anything about it."

MR. JONES: "We renew our motion to quash the panel for the prejudicial and incompetent statement defendant is alleged to have made about the Ku Klux Klan heretofore objected to, for the reason it. is highly prejudicial and doesn't give the defendant that fair and impartial trial he is entitled to.

"By THE COURT: Overruled." Defendant excepts.

At the close of the evidence for the State the defendant moved the court to instruct the jury to return a verdict in favor of defendant. The motion was overruled. The defendant offered no evidence.

I. The motion for new trial assigns fourteen errors. The first is that the information fails to charge an offense. This general assignment is not referred to in appellant's brief or argument. We think the information clearly charges a felonious transportation of moonshine whisky in violation of Section 21, page 242, Laws of 1923, and there is no merit in the assignment.

II. The third assignment is that the court erred in overruling the application for a change of venue.

Before entering upon the trial, the defendants, Hardin and Bunch, filed their application for a change of venue for the reason that "the inhabitants of Dunklin County are· so biased and prejudiced against the offense of which these defendants and each of them stand charged to the extent that they nor neither of them can receive a fair and impartial trial in Dunklin County." The supporting affidavits severally state that "the facts stated in the application for change of venue are true and correct. I further state that in my particular locality there seems to be a well defined prejudice as a whole in favor of enforcing what is known as the whisky law, and such prejudice is sufficiently strong that·

one standing charged with an unlawful transportation of the same could not receive a fair and impartial trial in Dunklin County, Mo.''

The court properly overruled the application. The statute provides for a change of venue to another county ''whenever it shall appear . . . that the minds of the inhabitants of the county in which the cause is pending are so prejudiced against the defend-, ant that a fair trial cannot be had therein.'' [Sec. 3969, R. S. 1919.] Prejudice of the inhabitants of a county against crime has not yet been made a cause for granting a change of venue to another county.

III. The fourth assignment is that the court erred in overruling defendant's motion to suppress evidence and to quash the search warrant and the sheriff's return. This assignment cannot be considered because the motion was not preserved in the bill of exceptions. The evidence clearly shows that no liquor was found on searching the automobile in which the defendant was riding.'

IV. The fifth assignment is that the court erred in overruling the motion to quash the panel and discharge the jury because of prejudicial matter injected into the cause by the prosecuting attorney. We will consider this contention in disposing of the next two assignments.

V. The sixth assignment is that the court erred in permitting the witness Grugett to testify that the defendant at the time of his arrest ''hoped that the damned Ku Klux Klan and Mrs. Grugett was satisfied;'' ''that the only difference between the Ku Klux members and the defendant was that Ku Klux members drank their liquor out of a bottle in the day time and defendant drank his out of a jug at night,'' and that the court erred in failing to strike out such statements as incompetent and prejudicial.

VI. In the seventh assignment, which may be considered with the sixth, it is alleged that the court erred in permitting Grugett, sheriff, to testify that defendant said at the time of his arrest that he had a pint of whisky and that he threw it out. This statement was made before the keg was recovered. Appellant would have us assume he meant to say he threw out a *pint bottle* of whisky and also assume he carried it in his pocket, thus piling inference on inference. The jury might conclude he meant there was only a pint of whisky in the keg he threw out. There was no evidence that he threw out any other container than

the keg, and the State had the right to contend that he meant to minimize his offense. If defendant had said he had only a pint bottle of whisky and threw it out, he would be justified in his contention that, in the absence of other evidence, the presumption would be indulged that defendant carried the bottle on his person and the statement would not support the charge of transportation. [State v. Peters (Mo. Sup.), 6 S. W. (2d) 838.] But that is not the case made by the evidence. There is no evidence that the defendant threw a bottle of whisky out of the car, but there is evidence Entire Conversation. that he threw out a keg which was found to contain five gallons of moonshine whisky. The State was entitled to prove all the defendant said to the sheriff at the time of his arrest; the entire conversation was admissible. [State v. Lovell, 235 Mo. 343 (6), 138 S. W. 523; 16 C. J. 723, sec. 1481.] We cannot assume that the defendant's garrulous remarks about the Ku Klux Klan could or would prejudice his defense with the jury. But whether they were prejudicial or not, the whole conversation was admissible in evidence. The court did not err in overruling the motion to discharge the jury as contended in the fifth assignment.

VII. The eighth assignment is that the court erred in permitting the jurors to inspect and smell the bottle of alleged moonshine offered in evidence and identified by the sheriff as having been taken from the keg thrown out of the car by defendant. In the recent case of State v. Sissom, 278 S. W. 704, 705 (3), we held the court did not err in permitting the jury to inspect and smell the liquor alleged to have been purchased from the defendant.

VIII. The eleventh assignment is that the court erred in failing to instruct the jury that the credibility of the witnesses was for the jury, and that they had the right to believe or disbelieve any or all of the testimony. In the absence of a request the court was not required to instruct on the credibility of the witnesses, which is a collateral matter and not an element of the offense charged. The giving of such an instruction is always within the discretion of the trial court. [State v. Miller (Mo. Sup.), 292 S. W. 440 (3 and 4).]

IX. Instruction number 2 for the State advised the jury that if they found from the evidence beyond a reasonable doubt that the defendant Hardin at the County of Dunklin, on or about November 15, 1926, did transport moonshine whisky, to-wit, one gallon more or less, they would find him guilty as charged in the information and assess his punishment, etc., and if you do not find the facts so to be as set out above, then you will acquit the

defendant. *The jury is further instructed that all persons who act together with a common intent in the commission of a crime are equally guilty.* (Our italics.)

The twelfth assignment is that the court erred in incorporating in the instruction the portion we have italicized, in that it invades the province of the jury and assumes there was a conspiracy of two or more persons to commit a crime.

The portion of the instruction complained of is a mere general declaration of the principle or rule of law applicable to offenses alleged to have been committed by two or more persons (State v. Valle, 164 Mo. 539, 550, 65 S. W. 232) and, when read in connection with the other instructions given in the case, gives not the slightest reason to contend that it invades the province of the jury or that it assumes there was a conspiracy of two or more persons to commit a crime.

X. The thirteenth assignment is that the court erred in giving Instruction 4 for the State as to statements made by defendant (if any) in relation to the offense charged in the information; that if any such statements were by the defendant they should all be considered together; the defendant is entitled to the benefit of what he said for himself, if true, and the State is entitled to the benefit of anything he may have said against himself. What the defendant said against himself, if anything, the law presumes to be true unless negatived by some other evidence in the case, because said against himself; what the defendant said for himself the jury may believe or disbelieve as it is shown to be true or false by the evidence. *It is for the jury to consider under all the facts and circumstances in evidence how much of the whole statement or statements of the defendant proved by the State, if any, the jury from the evidence in the case deem worthy of belief.* (Our italics.)

Appellant's contention in the motion for new trial is that there was no testimony of any statements of defendant relative to the offense of transporting whisky; that the instruction invades the province of the jury in referring to the statements as having been proved by the State, and "the only alleged statements made by defendant was in reference to the Ku Klux Klan and this instruction assumed that the jury might take that statement into consideration in determining the guilt of defendant of the offense charged."

We virtually disposed of this contention in discussing appellant's seventh assignment. In the state of the evidence we think appellant's statement that he had a pint of whisky and threw it out was admissible in support of the charge of transportation of moonshine. Appellant criticizes the use of the word "proved" in the latter part of the instruction, which we have italicized. A simple reading of the

38

instruction shows it does not assume that the State *proved* any statement. The instruction left it to the jury to determine how much of the statement or statements proved by the State, *if any*, were worthy of belief. It may be awkwardly expressed, but it could not mislead the jury. The instruction did not invade the province of the jury nor assume facts in controversy. In the main it is in the form usually given and approved by the courts. [State v. Chick, 282 Mo. 51 (4), 221 S. W. 10; State v. Hayes (Mo. Sup.), 262 S. W. 1034 (5); State v. Long (Mo. Sup.), 253 S. W. 729 (8).]

XI. Other assignments of error in the motion for new trial are without merit and need not be discussed. In appellant's brief it is alleged that the court erred in permitting the prosecuting attorney to make improper and prejudicial argument, "the natural inference and deduction from which was a comment on the failure of the defendant to testify in the cause." No complaint of this character was made in appellant's motion for new trial and the question cannot be raised for the first time in appellant's brief.

XII. Aside from the direct evidence that the defendant exercised control over the keg of moonshine, there is the evidence that when the sheriff undertook to arrest the defendants they fled from him to avoid arrest and the defendant Hardin threw the keg out of the car with the manifest intent to get rid of and conceal the evidence of his crime. We think there is ample evidence to support the verdict of the jury.

An examination of the instructions shows that the court properly instructed the jury on all questions of law arising in the case. Finding no prejudicial error in the record, the judgment is affirmed.

PER CURIAM:—This cause coming into Court en Banc from Division Two, the foregoing opinion of HIGBEE, C., is adopted as the opinion of the Court en Banc. *Atwood, Walker, Gantt* and *Frank, JJ.,* concur; *White, C. J.,* and *Ragland, J.,* dissent; *Blair, J.,* not sitting.