THE STATE v. CHARLIE JONES, Appellant.—55 S. W. (2d) 960.

Division Two, December 14, 1932.

*S. M. Meeks* and *John Moberly* for appellant.

*Stratton Shartel*, Attorney-General, and *Denton Dunn*, Assistant Attorney-General, for respondent.

HENWOOD, J.—An information was filed in the Circuit Court of Howell County by which the defendant was charged with the unlawful transportation of "a quantity of hootch, moonshine, corn whiskey." The venue was changed to the Circuit Court of Carter County, where a jury found the defendant "guilty of transporting corn whiskey as charged in the information" and assessed his punishment at imprisonment in the county jail for three months. He was sentenced accordingly and appealed.

The State rested its case in chief on the testimony of A. E. Seiberling, a city, township and county police officer, and the exhibits admitted in evidence in connection with his testimony. He testified: He had been a police officer of the city of West Plains, constable of Howell Township and a deputy sheriff of Howell County for six or seven years. Early in the morning of November 13, 1930, a search warrant was placed in his hands, and about 8:30 or 9 o'clock that morning he and Mr. Bean, the prosecuting attorney of the county, went in his Ford sedan to a point on Highway No. 63 about thirteen miles east of West Plains, and about one mile east of Brandsville, in Howell County, where they parked his car on the south side of the highway, "headed west, towards West Plains." A few minutes before noon he recognized the defendant's Chevrolet sedan approaching from the east when it was about seventy-five or eighty yards away and running at the rate of about forty miles per hour, and recognized the defendant as the driver of the approaching car when it was about twenty steps away. As to what happened at that time, he said: "I stepped out and put my hand up to stop him, but had to get out of the way as he came by. I got turned around and shot two shots at his casings with a shotgun, but didn't stop him. He run probably something like thirty steps just after I shot the second shot, and I saw whiskey begin to run out of the car; and in just a few feet more he slowed up, opened the door on the right hand side of the car and threw the sack out. There was whiskey along there for thirty or forty steps, where it run out of the car. I got the sack. I taken it about a mile up the road to a filling station that Mrs. Burroughs runs, and asked her for a jar or something. She gave me a quart jar, and I squeezed some whiskey out of the sack into the jar. There were six quart jars (in the sack), all broken to pieces." He further testified: There was another man in the front seat of the defendant's car and two ladies in the back seat, but he "didn't know any of them." He and Mr. Bean drove west, following the defendant's car only as far as Brandsville, where they "stopped to get the jar," and the defendant was not arrested

until a week or ten days later. "Before prohibition" and before the adoption of "local option" in Howell County he was "in the saloon business" in West Plains and "tended bar" six or seven years and as constable and deputy sheriff he had "considerable experience in handling moonshine liquor, something like a hundred different times." He knew the difference between the taste and smell of regularly distilled whiskey and moonshine whiskey, and knew the smell of illegally distilled corn whiskey. The whiskey he squeezed out of the sack into the jar was "corn whiskey, distilled illegally." It had a stronger odor than regularly distilled corn whiskey. The sack and the jar of "corn whiskey" referred to by this witness were admitted in evidence and exhibited before the jury.

The defendant testified that he lived in Oregon County in November, 1930, about nine miles from Brandsville; that he was at home on November 13, 1930; and that he did not leave his home, or drive a car anywhere, or transport any liquor of any kind, or see Mr. Seiberling, that day. On cross-examination he admitted that he had been twice previously convicted "on liquor charges," the first time "about twenty years ago," and the second time "about eight or nine years ago." In his defense of *alibi* the defendant was supported by his wife, his half brother and a woodcutter who testified that they were at the defendant's home on November 13, 1930, and that the defendant did not leave his home that day.

Mrs. Emma Burroughs and J. C. Featherstone were called by the State as witnesses in rebuttal. Mrs. Burroughs testified that she lived in Brandsville and operated a filling station on Highway No. 63, "where the road turns off to go down town;" that "about noon" one day in November, 1930, Mr. Seiberling and Mr. Bean stopped their car at her filling station and asked for a fruit jar; that Mr. Seiberling asked "which way" Charlie Jones (the defendant) turned, and she "told him he went down town;" that Mr. Seiberling and Mr. Bean got a fruit jar and squeezed a sack which they brought there; that Charlie Jones had stopped at her filling station "at different times" and she had known him when she saw him for several years; that "just a few minutes" before Mr. Seiberling and Mr. Bean stopped at her filling station that day Charlie Jones "came from the same direction," driving his Chevrolet car, "put on the brakes," and turned his car "to go into Brandsville." Mr. Featherstone testified that he lived in Brandsville and was deputy constable of Howell Township in Howell County; that he had known the defendant about thirty years; that while driving his car along Highway No. 63 about nine miles from Brandsville, "sometime between 10 and 11:30 o'clock" in the morning of the day Mr. Seiberling and Mr. Bean "found some liquor in a sack

thrown out of a car," he saw the defendant driving his Chevrolet car out of a lane "on to the highway;" that the lane "leads out past where Mr. Jones (the defendant) lives;" that "there were two in the front seat" of the defendant's car, but he didn't know the other party in the front seat," and "couldn't say whether or not there was any one in the back seat."

The defendant has filed no brief. In his motion for a new trial, he specifically complains of the action of the trial court in overruling his motion to quash the information, in overruling his demurrer at the close of the evidence, in refusing his instruction on circumstantial evidence, and in not sufficiently rebuking the prosecuting attorney for expressing his personal opinion of the defendant's guilt in his argument to the jury.

I. The motion to quash the information was properly overruled. The information follows the language of the statute and is sufficient in every particular. [Sec. 4500, R. S. 1929.] Like informations have been upheld by this court in numerous cases. [State v. Howard, 324 Mo. 145, 23 S. W. (2d) 11, and cases cited.]

II. The demurrer at the close of the evidence was also properly overruled. According to the testimony of officer Seiberling the defendant was "caught in the act" of transporting a quantity of "illegally distilled corn whiskey" in an automobile along a public highway in Howell County, and when signaled by Seiberling to stop his automobile the defendant fled and while in flight attempted to destroy or to get rid of the evidence of his guilt. This testimony alone, to say nothing of the corroborating testimony of Mrs. Burroughs and officer Featherstone, made a clear case for the jury, and is amply sufficient to support the verdict. [State v. Hardin, 324 Mo. 28, 21 S. W. (2d) 758.]

III. The defendant offered an instruction which correctly stated the applicable rule in cases where the State relies on circumstantial evidence alone. This instruction was properly refused because the State did not rely on circumstantial evidence alone in this case, but largely on the testimony of an eyewitness. [State v. Mangercino, 325 Mo. 794, 30 S. W. (2d) 763, and cases cited.]

IV. As to the argument of the prosecuting attorney of which the defendant complains, the record shows the following proceedings:

"BY MR. MOBERLY: Defendant objects to the statement by the Prosecuting Attorney, Mr. Bean, during argument of the case, that

'he personally believes the defendant to be guilty and that the jury should convict him.'

"BY THE COURT: Objection sustained. You should state that 'under the evidence' and so forth.

"BY MR. MOBERLY: Defendant objects and excepts to the ruling and remarks of the State."

As thus shown, the objection to the argument complained of was sustained and the prosecuting attorney admonished to confine his argument to the evidence, and no further action by the court was requested. On this record, the defendant is not in a position to complain of the failure of the court to further rebuke the prosecuting attorney.

We find no error in the record proper. The verdict and the judgment are in approved form.

The judgment is affirmed. All concur.